

# NUMBER 13-14-00636-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LAWRENCE MIRELES,                                                         Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

## On appeal from the 319th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Perkes and Longoria**
**Memorandum Opinion by Justice Longoria**

Appellant Lawrence Mireles challenges his conviction by a jury for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02 (West, Westlaw through 2015 R.S.). We affirm.

## I. BACKGROUND

On June 28, 2012, law enforcement officers discovered the body of Jenna Hernandez, a sixteen year-old female from Port Aransas, Texas. Hernandez had been reported missing by her mother on June 25, 2012. An autopsy established that she had been shot in the head with a firearm. Hernandez was scheduled to testify against Joshua Davis at a hearing on the State's motion to revoke Davis' probation. Hernandez was to testify regarding an assault Davis allegedly committed against her a few months before her disappearance. Appellant is a close friend of Davis and once dated Hernandez.

The State charged appellant with murdering Hernandez, alleging that he lured her to a meeting and shot her to prevent her from testifying against Davis. Appellant pled not guilty, and the case was tried to a jury. The jury returned a verdict of guilty and assessed punishment at sixty years' imprisonment in the Texas Department of Criminal Justice, a $10,000 fine, and court costs. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant argues in his first issue that the evidence is legally insufficient to support his conviction. We disagree.

### A. Standard of Review and Applicable Law

When evaluating the legal sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a reasonable trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the role of the factfinder to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*

2

Circumstantial evidence is as probative as direct evidence for these purposes, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that every fact introduced into evidence point "directly and independently" to the guilt of the defendant as long as the cumulative effect of all of the incriminating facts is sufficient to support the conviction. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Hooper*, 214 S.W.3d at 13).

We review the sufficiency of the evidence by measuring it against the hypothetically correct jury charge for the case. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Sanchez v. State*, 376 S.W.3d 767, 772 (Tex. Crim. App. 2012). As authorized by the indictment in this case, the State was required to prove beyond a reasonable doubt that appellant (1) caused the death of Hernandez by shooting her with a firearm and (2) intended or knew that her death would result from that act. TEX. PENAL CODE ANN. §19.02(b)(1); *see Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013).

**B. Discussion**

The State presented testimony from Brian Downham and John Johnson, friends of appellant, that appellant admitted to them on separate occasions that he shot Hernandez. Detective Kyle Rhodes of the Port Aransas Police Department testified that Keilani Lasher, appellant's girlfriend at the time of the murder, told Rhodes that

3

"[appellant] came to her and that he broke down and that he told her that he had helped them kill [Hernandez]." Appellant did not object to the testimony of Downham, Johnson, or Detective Rhodes. On appeal, appellant challenges Downham and Johnson's credibility and emphasizes their ties to Davis and his father, who were allegedly members of the Peckerwoods prison gang. We reject appellant's arguments because it is the sole province of the jury to decide the credibility of witnesses and the weight, if any, to give to their testimony.[1] *See Whatley*, 445 S.W.3d at 166.

The State points out, and we agree, that appellant's extra-judicial confessions are not sufficient alone to support his conviction. The *corpus delecti* rule requires that the State produce "evidence independent of a defendant's extrajudicial confession show[ing] that the essential nature of the charged crime was committed by someone." *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015) (citing *Hacker v. State*, 389 S.W.3d 860, 866 (Tex. Crim. App. 2013)). However, we conclude that the State provided ample evidence that the criminal act of another caused Hernandez's death and that appellant is the person responsible. *See Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993) (en banc) (noting that the *corpus delecti* of murder is established by showing the death of a human being by the criminal act of another). J.G.,[2] a close friend of Hernandez, testified that Hernandez was staying with her on the night she went missing until Hernandez received a text message from appellant. According to J.G., Hernandez left at that time to "go hang out with" appellant. Luis Ramirez, Lasher's current boyfriend, testified that

---

[1] Appellant also argues that we may not consider much of this testimony because it was inadmissible. We reject this argument because a legal-sufficiency review includes all of the evidence presented to the jury, even if erroneously admitted. *See Soliz v. State*, 432 S.W.3d 895, 900 (Tex. Crim. App. 2014).

[2] We refer to J.G. by her initials because she was a minor at the time of the trial.

4

appellant asked him in June of 2012, the same month that Hernandez went missing, about how to remove gunshot residue. Jennifer Emmitt, Downham's girlfriend, testified that appellant and Davis discussed their dislike of Hernandez in Downham's presence "and that they had a hit on [Hernandez]." Allison Heard, a DNA technician at the Texas Department of Public Safety, testified that appellant could not be excluded as the source of a DNA sample taken from underneath one of Hernandez's fingernails. Heard further testified that the sample probably had not been under her fingernails for a substantial length of time because routine handwashing would most likely have damaged the DNA of the sample.

Furthermore, Detective Rhodes testified that appellant evaded police by running out the back door of his house the first time they came to his residence to discuss Hernandez's whereabouts. *See Gonzalez v. State*, No. 13-13-00427-CR, ___ S.W.3d ___, ___, 2014 WL 4049800, at *14 (Tex. App.—Corpus Christi Aug. 14, 2014, pet. ref'd) (noting that evidence of flight is admissible as circumstantial evidence of guilt). When police successfully made contact with appellant, appellant told them that he had not communicated with Hernandez for several months. However, appellant later admitted to Detective Rhodes that he had recently exchanged text messages with Hernandez. Appellant also told police that his phone had automatically deleted the messages after two hours, but Kenneth Patterson, a computer forensic specialist, testified at trial that he examined appellant's phone and that there were no applications on it that would delete text messages after a certain period of time. Patterson further testified that the phone contained text messages from longer than two hours ago and that the only deleted messages from the time period of the murder were sent directly between Hernandez and

5

appellant's phone.[3]  Patterson testified that he recovered seventy-seven text messages sent directly between the two phones, the last of which was sent at 12:18 a.m. on the day of the murder.  Appellant's false statements regarding when he was in contact with Hernandez and his attempts to delete the evidence of their communications constitute circumstantial evidence of guilt.  *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that attempts to conceal incriminating evidence and making improbable statements to police are probative of wrongful conduct and circumstantial evidence of guilt); *King v. State*, 29 S.W.3d 556, 564–65 (Tex. Crim. App. 2000) (holding that the act of making false statements to police is circumstantial evidence because it shows a consciousness of guilt).

In sum, we hold that the foregoing circumstantial evidence is sufficient to show that Hernandez was killed by the criminal act of another.  *See Miller*, 457 S.W.3d at 924.  This evidence, combined with the evidence of appellant's multiple extra-judicial confessions, form a legally sufficient basis for a reasonable jury to conclude that appellant is guilty of murdering Hernandez.  *See Whatley*, 445 S.W.3d at 166.  We overrule appellant's first issue.

### III. Cruel and Unusual Punishment

Appellant argues in his second issue that his sentence of sixty years' imprisonment and a $10,000 fine is so grossly disproportionate that it violates the Eighth Amendment's guarantee against cruel and unusual punishment.  *See* U.S. Const. amend. VIII.

This Court has never formally decided whether the type of proportionality review appellant requests survived the United States Supreme Court's decision in *Hamelin v.*

---

[3] Hernandez's cell phone was never recovered by police.

6

*Michigan*, 501 U.S. 957 (1991). *See Sullivan v. State*, 975 S.W.2d 755, 757 (Tex. App.—Corpus Christi 1998, no pet.) (assuming without deciding that the defendant could assert a proportionality claim but finding that the sentence was not grossly disproportionate). However, Texas courts have consistently held that a defendant waives a proportionality claim by failing to object in the trial court. *See Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Rhoades v. State*, 934 S.W.3d 113, 120 (Tex. Crim. App. 1996)); *Noland v. State*, 264 S.W.3d 144, 151–52 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi 2005, pet. ref'd). Appellant does not dispute that he did not object in the trial court on this ground.[4] Accordingly, we hold that appellant did not preserve this issue. *See Kim*, 283 S.W.3d at 475; *Noland*, 264 S.W.3d at 151–52; *Trevino*, 174 S.W.3d at 928; *see also* TEX. R. APP. P. 33.1. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.


Nora L. Longoria
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of December, 2015.

---

[4] Appellant states in his brief that he raised this issue to preserve it for review in federal court. Appellant argues in this section of his brief that "[c]learly it was within a court's power to review a sentence imposed by judge or jury to determine whether such sentence passed constitutional muster, even if no objections were made during trial." To the extent that appellant intended to argue that our holding in *Trevino v. State* was incorrect and that this issue may be raised for the first time on appeal, we reject his argument. *See* 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi 2005, pet. ref'd).